IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fraternal Order of Police,       :
Fort Pitt Lodge No. 1,        :
              Appellant     :   No.  858 C.D. 2022
                            :
      v.               :   Submitted: March 24, 2023
                            :
City of Pittsburgh, Pennsylvania   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE STACY WALLACE, Judge

## _OPINION NOT REPORTED_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                   FILED: September 22, 2023

This case involves challenges to a final award issued after a grievance arbitration conducted between the Fraternal Order of Police, Fort Pitt Lodge No. 1 (FOP) and the City of Pittsburgh, Pennsylvania (City), regarding the termination of Master Police Officer Paul Abel ("Abel").[1] The FOP appeals from the order of the Court of Common Pleas of Allegheny County (trial court) filed July 20, 2022, which denied the FOP's Petition to Review/Vacate Arbitration Award (Review Petition). The

---

[1] The grievance arbitration was conducted pursuant to the Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, No. 111, _as amended_, 43 P.S. §§ 217.1-217.10 (Act 111). Under Act 111, "grievance" arbitration and "interest" arbitration involve different subjects:

> "Grievance arbitration" is the arbitration which occurs when the parties disagree as to the interpretation of an existing collective bargaining agreement. "Interest arbitration" is the arbitration which occurs when the employer and employee are unable to agree on the terms of a collective bargaining agreement.

_Town of McCandless v. McCandless Police Officers Association_, 901 A.2d 991, 993 n.2 (Pa. 2006) (quoting _Pennsylvania State Police v. Pennsylvania State Troopers' Association_, 656 A.2d 83, 85 n.2 (Pa. 1995)).

FOP argued before the trial court, and argues again in this Court, that Arbitrator Michael Zobrak (Arbitrator Zobrak) did not have jurisdiction over the merits of the subject grievance and exceeded his authority in fashioning his award because the City did not comply with the timeliness requirements of the parties' collective bargaining agreement. The trial court disagreed and denied the FOP's Review Petition. Because we conclude Arbitrator Zobrak both had jurisdiction and did not exceed his authority in fashioning his award, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The record reflects, and the parties agree, that the facts material to the issues presented in this appeal are not disputed. We summarize them as follows.[2]

### A. The Parties' Collective Bargaining Agreement

At all times relevant to this appeal, the City and FOP were parties to a collective bargaining agreement, alternatively titled a "Working Agreement," effective between January 1, 2019, and December 31, 2022 (CBA). Relevant here, Sections 5 and 19 of the CBA provide procedures governing police discipline and the prosecution and resolution of grievances, respectively. (CBA §§ 5, 19; Reproduced Record (R.R.) at 23a, 95a.)[3] Section 5 provides, in pertinent part, as follows:

> **SECTION 5 – GRIEVANCE PROCEDURE**
> . . . .
> C. PROCEDURE
> . . . .
> 3. Step Three

---

[2] Because the merits of the underlying grievance are not before us in this appeal, we do not recite in detail the evidence relied upon by the City to justify Abel's termination.

[3] Although the Reproduced Record is paginated using the prefix "R.", we reference herein only the numeric portion of the page designations. For example, page "R.1a" will be referenced as "1a."

a. Any grievance which has been processed in accordance with the provisions of this Section, but which has not been satisfactorily resolved may, upon proper appeal, be submitted to arbitration before an impartial [a]rbitrator to be selected from the list of impartial arbitrators established by the parties as set forth below.

. . . .

b. The [a]rbitrator shall be requested to submit his decision in writing, within thirty (30) days after the conclusion of the hearing or hearings (and/or receipt of any transcript and/or briefs thereof) and the decision of the [a]rbitrator, so rendered shall be final and binding upon the employee involved and upon the Parties to this [CBA]. . . . The [a]rbitrator shall not have the right to add to, subtract from, modify, or disregard any of the terms or provisions of the [CBA].

. . . .

## SECTION 19 – POLICE DISCIPLINE PROCEDURES

I. 1. All disciplinary action will be initiated through the preparation and filing of a Disciplinary Action Report [(DAR)], copies of which shall be given to the Police Officer, and to [ ] FOP.

2. Within fourteen (14) calendar days after the [DAR] goes through the chain of command and is signed by the Chief, there will be a meeting (referred to as the initial meeting) between the Police Officer and the FOP with the Director of Public Safety or his designate and the Chief or Assistant Chief. At this meeting, the City will describe the basis for the proposed discipline and describe in summary fashion the evidence upon which it is based. The Police Officer will be given an opportunity at this meeting to respond to the charges against him or her.

. . . .

3

6. Within fourteen (14) calendar days after receipt of the Director [of Public Safety]'s final decision the Police Officer or the FOP may file a grievance in writing protesting the disciplinary action. The grievance will include a request for arbitration.

. . . .

10. If the City does not comply with any of the time limits specified above, the disciplinary action shall be rescinded, and the grievance granted with the officer being made whole. If there is a dispute over the rescission of the discipline or the make whole remedy that matter shall be referred to final and binding arbitration pursuant to Section 5(C)(3).

. . . .

12. All time limits in the above procedure may be extended by mutual agreement in writing.

(CBA §§ 5(c)(3), 19(I)(1-2), (6), (10), (12); R.R. at 24a, 26a-27a, 95a-97a.)

## B. The Grievance

Abel was employed as a police officer by the City from May 15, 2000 through December 18, 2020. (Arbitration Stipulations of Fact (SOF) ¶ 1; R.R. at 1a.) As of his final day of employment, Abel held the rank of a Master Police Officer. (SOF ¶ 2; R.R. at 1a.) On October 11, 2020, Abel was working a secondary employment detail providing traffic control in the City near Heinz Field at the intersection of Allegheny Avenue and Casino Drive. (SOF ¶ 3; R.R. at 1a.) During his shift, Abel arrested an individual (Suspect) for various violations of the City's Code of Ordinances (City Code)[4] and the Pennsylvania Crimes Code, 18 Pa.C.S. §§ 101-9546,[5] after he

---

[4] City of Pittsburgh, Pennsylvania Code of Ordinances (2023), available at https://library.municode.com/pa/pittsburgh/codes/code_of_ordinances (last visited Sept. 21, 2023).

[5] Although the parties' stipulations of fact and certain documents in the Reproduced Record indicate that this individual was cited with various violations of the Motor Vehicle Code, 75 Pa. C.S. **(Footnote continued on next page…)**

4

allegedly observed Suspect engage in panhandling and related conduct. (SOF ¶ 4; R.R. at 1a.) After reviewing Abel's Investigative Report, Criminal Complaint/Affidavit of Probable Cause, and surveillance video footage of the incident, the City initiated disciplinary action against Abel through the preparation of a DAR. (SOF ¶¶ 5-9; R.R. at 1a-2a, 150a.) The City alleged in the DAR that Abel violated several provisions of the City Bureau of Police Manual of Procedural Orders during his interactions with Suspect.[6] (SOF ¶ 9; R.R. at 2a, 152a.) Abel was served with, and signed for, the DAR on November 5, 2020. (SOF ¶ 10; R.R. at 2a, 150a.) City Police Chief Scott Schubert signed the DAR on November 10, 2020. (R.R. at 150a.)

On November 12, 2020, the City scheduled an initial meeting for November 23, 2020 (Initial Meeting) to review the DAR. (R.R. at 149a.) However, due to a scheduling conflict, the City unilaterally changed the Initial Meeting date to December 1, 2020, without the FOP's written consent. (R.R. 142a, 148a.)[7] After the

---

§§ 101-9701, the referenced sections and violation descriptions appear to refer instead to the Crimes Code. *See* SOF ¶ 4; R.R. at 1a; *see also* R.R. at 152a, 153a.

[6] City of Pittsburgh, Pennsylvania, Bureau of Police, Manual of Procedural Orders (2023), available at https://pittsburghpa.gov/police/manual-procedural-orders (last visited Sept. 21, 2023). Specifically, Abel was charged with violating Subsections 3.7.2 (Conduct Toward the Public), 3.12.1 (Incompetency), and 3.19.2 (Truthfulness) of General Order 16-01 (Standards of Conduct), and Subsection 4.1 (Physical Arrests) of General Order 44-01 (Arrests-Physical, Summons, or Warrant). *See* R.R. at 175a, 177a, 185a.

[7] Although there is no evidence in the record establishing the reason for the change in date of the Initial Meeting, the parties do not dispute that the meeting date was changed unilaterally by the City without the FOP's written consent. On November 20, 2020, the City apparently withdrew the criminal charges filed against Suspect, and thereafter cancelled the November 23, 2020 Initial Meeting. In his award, Arbitrator Zobrak indicated that a criminal court proceeding regarding the charges was also scheduled for November 23, 2020, which proceeding the City presumably would have to attend:

**(Footnote continued on next page…)**

Initial Meeting on December 1, 2020, City Police Chief Schubert recommended discipline in the form of a five-day suspension pending termination, which suspension was imposed on December 8, 2020. (R.R. 146a-48a.) Abel appealed the discipline which, after hearing, was upheld by City Director of Public Safety Wendell D. Hissrich on December 18, 2020. (R.R. at 142a-43a.) Abel's employment therefore was terminated as of that date. (SOF ¶ 1; R.R. at 1a; 142a-43a.) FOP thereafter filed a grievance challenging the discipline (Grievance). (R.R. at 230a.)

## C. Arbitration Proceedings

Disposition of the Grievance was assigned to an arbitration panel in accordance with the terms of the CBA. After hearing on March 2, 2021, Arbitrator Zobrak issued a Summary Award on March 13, 2021, denying the Grievance. (R.R. at 227a.) In his Summary Award, Arbitrator Zobrak first noted that the FOP "raised a procedural objection to the unilateral cancellation of the November 23, 2020 [Initial Meeting]" and that the "City cited the reason for the cancellation as the conflict[ ] [between] the time of the hearing and the court proceedings scheduled for the same day." (R.R. at 227a.) After hearing, Arbitrator Zobrak found as follows regarding the FOP's objection to the City's postponement of the Initial Meeting:

> It is determined that the procedural objection raised by the FOP is to be set aside. The conflict between the scheduled court proceeding and the administrative hearing for the same day provides the City with justification for postponing the administrative hearing. It is recognized that the Deputy Chief

The judicial hearing for [Suspect] was also scheduled for the afternoon of the date for the scheduled [Initial Meeting]. The [City] had determined not to proceed with the charge[s] against [Suspect] and went to the [c]ourt three days prior to the scheduled [Initial Meeting] and withdrew the charges. The [City] also rescheduled the [Initial Meeting] without agreement from the FOP.

(R.R. at 234a.)

6

went to court three days earlier to withdraw charges against [Suspect]. There is no evidence that the City's action in unilateral[ly] postponing [the Initial Meeting] was taken in bad faith. It is concluded that the scheduling of two proceeding[s] on the same day provides a reasonable presumption for postponing the administrative hearing.

(R.R. at 228a.) Arbitrator Zobrak went on to find that the City had just cause for the termination of Abel's employment, and accordingly denied the Grievance. *Id.* Upon request from the FOP, Arbitrator Zobrak issued a Final Award on November 22, 2021.

In his Final Award, Arbitrator Zobrak again noted the FOP's argument that the City's unilateral postponement of the Initial Meeting to December 1, 2020, violated Section 19(I)(2) of the CBA, which requires that an initial meeting occur within 14 calendar days of the date when the DAR is signed by the chief of police. (R.R. at 230a.) The FOP further argued that, because the City did not comply with the timeliness requirements of the CBA's disciplinary procedure, the discipline must be rescinded, the Grievance granted, and Abel made whole pursuant to Section 19(I)(10) of the CBA. (R.R. at 231a.) The City argued in opposition that the FOP did not raise the timeliness issue prior to the arbitration hearing and that the FOP's submission of handwritten notes purportedly indicating that the issue was raised earlier was not corroborated with live testimony. (R.R. at 232a.) The City also argued that neither Abel nor the FOP was prejudiced by the postponement of the Initial Meeting and that the grievance was quickly processed to arbitration. *Id.*

In again rejecting the FOP's procedural challenge, Arbitrator Zobrak explained:

The timeliness issue is central to the FOP's attempt to have the [G]rievance sustained. As such, it was imperative that the timeliness issue be raised early in the grievance process. The FOP did not raise this issue throughout the grievance procedure. As pointed out on the record, the only evidence

7

that timeliness was aired is the mention of timeliness on a sheet of paper allegedly authored by an unidentified FOP member. If, as argued by the FOP, the timeliness issue demands that the [G]rievance be sustained, it must be concluded that the failure to raise the timeliness issue throughout the grievance process must be viewed as the FOP's waiving such a claim. For that reason, it is determined that the timeliness [issue] lacks application in this matter.

(R.R. at 235a.) Having rejected the FOP's procedural arguments, Arbitrator Zobrak went on to again find just cause for Abel's termination. (R.R. at 235a-36a.)

### D. Before the Trial Court

On April 8, 2021, the FOP filed its Review Petition in the trial court, in which it argued that Arbitrator Zobrak's Final Award must be set aside because he lacked jurisdiction over the Grievance and exceeded his power in fashioning the Final Award. (R.R. 237a.) More specifically, the FOP first argued that, because the Initial Meeting was not timely held under the terms of the CBA, the Grievance was granted "by default," depriving Arbitrator Zobrak of jurisdiction. (R.R. at 244a.) The FOP argued secondly that Arbitrator Zobrak exceeded his power by "amending" Sections 5 and 19 of the CBA to include a "good faith" exception to the timeliness requirements applicable to initial meetings. *Id.*

The trial court denied the Review Petition, concluding that Arbitrator Zobrak had jurisdiction to decide the Grievance because Abel's termination was within the general class of controversies that a grievance arbitrator could consider. (R.R. at 311a.) The trial court further determined that, because Arbitrator Zobrak did not require the performance of an illegal act or one that the parties could not perform voluntarily, he did not exceed his authority in fashioning the Final Award. *Id.*

The FOP now appeals to this Court.

8

## II.   ISSUES PRESENTED

The FOP argues that (1) Arbitrator Zobrak did not have jurisdiction because the Grievance was granted "by default" pursuant to Section 19(I)(10) of the CBA when the City failed to timely conduct the Initial Meeting pursuant to Section 19(I)(2) of the CBA; and (2) Arbitrator Zobrak exceeded his authority in issuing the Final Award because he amended the CBA to add a "good faith" exception to its timeliness requirements.  (R.R. at 243a-44a.)

## III.   DISCUSSION

### A.   Scope and Standard of Review

Our scope of review in grievance arbitration appeals, *i.e.*, *what* we may review, is precisely defined and well settled.  Our review is in the nature of "narrow certiorari," which allows us to inquire into only four aspects of an Act 111 arbitrator's award: (1) the arbitrator's jurisdiction; (2) the regularity of the arbitration proceedings; (3) an arbitrator's excessive use of power; and (4) the deprivation of constitutional rights. *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 768 A.2d 291, 294 (Pa. 2001).  Regarding our standard of review, *i.e.*, *how* we review the narrow scope of issues before us, we apply a dual standard of review.  Where resolution of an issue turns on a pure question of law, or the application of law to undisputed facts, our review is plenary. *Pennsylvania State Police v. Pennsylvania State Troopers Association*, 840 A.2d 1059, 1062 (Pa. Cmwlth. 2004).  "However, where it depends upon fact-finding or upon interpretation of the collective bargaining agreement, we apply the extreme standard of deference applicable to Act 111 awards; that is, we are bound by the arbitrator's determination of these matters even though we may find them to be incorrect." *Id.  See also City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 224 A.3d 702, 709 (Pa. 2020) (*City of Pittsburgh v. FOP*).

## B. Analysis

### 1. Jurisdiction

Although its argument at times vacillates, the FOP essentially argues that, because the City unilaterally postponed the first-scheduled Initial Meeting to a date beyond the 14-day period set forth in Section 19(I)(2) of the CBA, the Grievance was granted "by default," and Arbitrator Zobrak thereby was deprived of jurisdiction over the entire dispute.

"An arbitrator exceeds his jurisdiction when he addresses issues not submitted to him." *City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1 (on-duty and off-duty pay for events)*, 111 A.3d 794, 800 (Pa. Cmwlth. 2015) (internal quotation and citation omitted). In its brief, the FOP appears to conflate the related, but distinct, questions of (1) whether Arbitrator Zobrak had jurisdiction over the FOP's timeliness objection, (2) whether Arbitrator Zobrak correctly decided that question, and (3) whether Arbitrator Zobrak had jurisdiction to consider the underlying merits of the Grievance, namely, whether Abel's termination was supported by just cause. We consider here only the first question because the second, in essence, is better addressed under the FOP's second issue challenging Arbitrator Zobrak's authority. The third will be resolved as a matter of course by the disposition of the first two.

Regarding the FOP's timeliness objection, it is undisputed that the Initial Meeting did not occur within the 14-day period provided in Section 19(I)(2). Section 19(I)(1) specifically provides that, where the City does not comply with the CBA's time requirements, the disciplinary action at issue "shall be rescinded, and the grievance granted with the officer being made whole." (CBA § 19(I)(10); R.R. at 97a.) Section 19(I)(10) goes on to provide, however, that "[i]f there is a dispute over the rescission of the discipline, or the make[-]whole remedy[,] that matter *shall be referred*

10

*to final and binding arbitration pursuant to Section 5(C)(3).*" *Id.* (emphasis provided). Quite plainly, the CBA itself *requires* that disputes over the automatic rescission of discipline due to noncompliance with the CBA's timeliness requirements be submitted to binding arbitration, no doubt because such questions necessarily would require factfinding. The FOP cannot submit a grievance to arbitration and then argue that Section 19(I)(10) both mandates the summary grant of the grievance *by the arbitrator* and simultaneously deprives the arbitrator of jurisdiction.[8] Thus, to the extent that the FOP argues that its procedural objection deprived Arbitrator Zobrak of jurisdiction over the entire dispute, that argument fails.[9]

Our conclusion in this regard does not contradict, and indeed is supported by, our decision in *City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1*, 764 A.2d 101 (Pa. Cmwlth. 2000) (*City of Pittsburgh v. FOP (2000)*). There, the City challenged an arbitration panel's decision to decline jurisdiction over the *merits* of the termination of a City police officer. *Id.* at 101. The arbitration panel instead rescinded the termination without hearing because the City did not comply with the timeliness requirements in the parties' collective bargaining agreement.[10] *Id.* at 101-

---

[8] Throughout its brief, the FOP argues that Section 19(I)(10) requires that the Grievance be granted "by default." That terminology appears nowhere in Section 19(I)(10), and even if it did, it would not change our decision. The question of whether noncompliance with the CBA's timeliness requirements during the grievance process requires rescission of the subject discipline "by default" expressly would be an arbitrable issue under Section 19(I)(10).

[9] Although the FOP raised its timeliness objection at some point during the arbitration process, there is no evidence in the record that it ever challenged Arbitrator Zobrak's jurisdiction over this dispute until it appealed to the trial court. A grieving party must identify before the arbitrator the particular issues in dispute. *City of Pittsburgh v. FOP*, 224 A.3d at 712 n.9.

[10] Section 19-10 of collective bargaining agreement in *City of Pittsburgh v. FOP (2000)*, like Section 19(I)(10) in the CBA here, provided that, "[i]f the [City] does not comply with any of the time limits specified above, the disciplinary action will be rescinded." *Id.* at 103.

02. In *City of Pittsburgh v. FOP (2000)*, a City police officer, Mitchell, was terminated from the police force because he admitted to stealing money during the performance of his duties. *Id.* at 102. The FOP filed a grievance, which was submitted to arbitration. *Id.* At the arbitration hearing, both parties lodged procedural objections to the panel's jurisdiction over the merits of the termination, including, pertinently, challenges to the timeliness of the arbitration hearing. *Id.* The arbitration panel initially considered only whether the procedural challenges were valid and declined to address the merits of the dispute. *Id.* The panel sustained the FOP's timeliness objection and rescinded the termination on that ground alone, concluding that the City had not complied with the timeliness requirements in the collective bargaining agreement. *Id.* The panel further considered, and rejected, the City's argument that the FOP's timeliness argument had been waived because it was not raised prior to the scheduling of the arbitration hearing. *Id.* The trial court affirmed the panel's award. *Id.*

On appeal to this Court, we likewise affirmed, concluding that the panel acted within its authority in concluding that it lacked "jurisdiction" over the merits of Mitchell's termination. *Id.* at 103. Specifically, we concluded that the City, in essence, was only disputing "the arbitrator's interpretation of the terms of the [collective bargaining agreement] and its application of those terms." *Id.* We thus concluded that, "regrettably, we may not disregard the arbitrator's interpretation of the [collective bargaining agreement] or its application, despite the unpalatable result." *Id.* We also concluded that the panel's determination that the FOP had not waived the timeliness issue was not an "irregularity" in the proceedings, but instead was within the panel's ability to make necessary findings. *Id.* at 104.[11]

---

[11] (Now Senior) Judge Leadbetter concurred in *City of Pittsburgh v. FOP (2000)*, noting her disagreement with the Majority's conclusion that the arbitration panel's interpretation was **(Footnote continued on next page…)**

12

Although the arbitration panel in *City of Pittsburgh v. FOP (2000)* came to a conclusion opposite than that reached by Arbitrator Zobrak, it nevertheless is clear that the determinations of whether the City complied with the timeliness requirements of the CBA and whether the FOP waived any objections to those requirements may be, and here must be, considered by a grievance arbitrator. Those issues necessarily require factfinding and interpretation of the provisions of the CBA, and to the extent that the FOP argues that Arbitrator Zobrak did not have "jurisdiction" to consider them, its arguments are meritless.

## 2. Authority

FOP next argues that Arbitrator Zobrak exceeded his authority in fashioning the Final Award because he allegedly reformed the CBA to include a "good faith" exception to the 14-day Initial Meeting requirement in Section 19(I)(2). We disagree.

An arbitrator's award exceeds the arbitrator's authority if it requires the employer to perform an illegal act or does not involve legitimate terms of conditions of employment. *Fraternal Order of Police, Lodge No. 5*, 768 A.2d at 296-97 (Pa. 2001). *See also City of Pittsburgh v FOP*, 224 A.3d at 712 ("As long as an award concerns terms and conditions of employment, and the arbitrator does not require the performance of an illegal act—or one that a party could not do voluntarily—the authority prong of narrow certiorari review is generally met.") "An error of law alone is not sufficient to support a reversal of an arbitrator's award. An appellate court may not disregard an arbitrator's findings of fact or contract interpretation if the arbitrator

"reasonable." 764 A.2d at 104 (Leadbetter, J., concurring). Judge Leadbetter nevertheless concluded that, notwithstanding the arbitration panel's "manifestly unreasonable" interpretation of the collective bargaining agreement, "this issue is outside our scope of review, and therefore we must affirm the order of the court of common pleas." *Id.*

13

is even arguably construing or applying the contract and acting within the scope of his or her authority." *City of Pittsburgh v. FOP (2000)*, 764 A.2d at 103 (citation omitted). Although an arbitrator may not equitably reform a collective bargaining agreement under the guise of grievance arbitration, absent overt reformation, an arbitrator's determination will be affirmed if it contains legal reasoning that demonstrates sufficient interpretive focus, no matter how flawed. *City of Pittsburgh v. FOP,* 224 A.3d at 712.

We conclude that Arbitrator Zobrak did not equitably reform the CBA to include new terms, including a "good faith" exception to the grievance procedure's time requirements. Arbitrator Zobrak first concluded in his Summary Award that the FOP's procedural objection would be "set aside" because the unilateral postponement of the Initial Meeting by the City was both reasonably justified by the scheduling conflict and not made in bad faith. (R.R. at 228a.) Arbitrator Zobrak then found in his Final Award that the FOP did not raise the timeliness issue throughout the grievance procedure based on the fact that "the only evidence that timeliness was aired is the mention of timeliness on a sheet of paper allegedly authored by an unidentified FOP member." (R.R. at 235a.) Arbitrator Zobrak accordingly concluded that the FOP's failure to raise the timeliness issue in the grievance process "must be viewed as the FOP's waiving such a claim." *Id.*

When considered as a whole, Arbitrator Zobrak's Summary and Final Awards manifest his findings that the City's postponement of the Initial Hearing was justified, sought in good faith, and, presumably for those reasons, not timely challenged by the FOP. As we did in *City of Pittsburgh v. FOP (2000)*, we here must exercise extreme deference to Arbitrator Zobrak's factual findings and CBA interpretations in determining whether he exceeded his authority. The FOP in essence argues that Arbitrator Zobrak should have interpreted the CBA's terms differently and made

14

alternate findings of fact regarding whether the FOP failed to timely lodge its timeliness objection. Those arguments simply may not be considered under narrow certiorari review, and we reject them on that basis. Accordingly, because we find no overt reformation of the CBA and sufficient interpretative focus in Arbitrator Zobrak's Summary and Final Awards, we conclude that he did not exceed his authority in rejecting the FOP's timeliness objection and proceeding to consideration of the Grievance on the merits.

## IV.    CONCLUSION

Because Arbitrator Zobrak both acted within his jurisdiction and did not exceed his authority, we affirm the trial court's dismissal of the FOP's Review Petition.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fraternal Order of Police,          :
Fort Pitt Lodge No. 1,              :
            Appellant        :          No.   858 C.D. 2022
                        :
         v.                      :
                        :
City of Pittsburgh, Pennsylvania    :

## ***ORDER***

AND NOW, this 22nd day of  September, 2023, the July 20, 2022 order of the Court of Common Pleas of Allegheny County hereby is AFFIRMED.


                                     _____
                                      PATRICIA A. McCULLOUGH, Judge